**John P. GALLAGHER, Plaintiff,**

v.

**CHEMETRON CORPORATION RETIREMENT PLAN FOR SALARIED AND NON–BARGAINING UNIT EMPLOYEES, Chemetron Corporation, and Allegheny International, Inc., Defendants.**

Civ. A. No. 83–997.

United States District Court,
W.D. Pennsylvania.

Oct. 16, 1985.

Frank J. Lucchino, Pittsburgh, Pa., for plaintiff.

James D. Morton, Pittsburgh, Pa., for defendants.

OPINION

ZIEGLER, District Judge.

This is a claim brought under the Employee Retirement Income Security Act,

(ERISA), 29 U.S.C. § 1001, *et seq.*, in which plaintiff, a retired officer of Chemetron Corporation, challenges the determination of pension benefits under the Chemetron Corporation Retirement Plan.

The parties have stipulated as to the material facts and have submitted opposing motions for summary judgment. We find that the trustees of the Plan did not act in an arbitrary and capricious manner, and therefore defendants' motion for summary judgment must be granted.

## A. *History of Case*

John P. Gallagher served as president and chairman of the board of Chemetron Corporation from 1968 until 1977, when the corporation entered into a merger with a newly-formed, wholly-owned subsidiary of Allegheny International, Inc. As a result of the merger, Allegheny acquired all of the outstanding capital stock of Chemetron. Allegheny, also a defendant in this action, became administrator of the Chemetron Retirement Plan.

At the time of the merger, plaintiff and four officers of Chemetron held outstanding stock options under the Chemetron Stock Option Plan. However, under the terms of the merger, plaintiffs and the other officers with stock options executed an option cancellation agreement. This agreement required the option holders to surrender their option rights in return for a cash payment equal to the difference of the option price and the "market value" of the number of shares subject to option. "Market value" was defined as the average of the five highest of the last sale prices for common stock on each of the 15 full trading days immediately preceding the date of merger. Plaintiff was paid the sum of $423,250.

After serving the merged corporation for three years as a consultant, plaintiff retired in October 1981. Shortly before retirement, he applied for pension benefits under the Chemetron Retirement Plan. Plaintiff was informed that the trustees of the Plan had determined to exclude the payment for the stock option buyout as part of plaintiff's "compensation." (Under the Plan, a monthly pension benefit is based upon the participant's average monthly compensation during the five consecutive calendar years within the last ten calendar years of service which yield the highest average.) According to plaintiff, the failure of the trustees to include the option cancellation payment from plaintiff's compensation resulted in a reduction of his pension benefits in the amount of $1,567.09 per month.

After the Employee Benefits Appeal Committee denied the claim, plaintiff brought the instant civil action, contending that the trustees' decision to exclude the cancellation payment from the compensation figure for monthly pension benefit purposes was arbitrary and capricious. Subject matter jurisdiction is based on 29 U.S.C. § 1132.

## B. *Discussion*

As the parties have noted, the standard of review is narrow in an action challenging an administrative decision in a pension plan governed by ERISA. We are limited to determining whether the trustees' act was arbitrary or capricious. *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 187 (3d Cir.1984). As a reviewing court, we must determine whether the challenged decision resulted from a "consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). In short, unless we find that the decision is irrational, we must uphold the decision of the trustees. *Federal Communications Commission v. National Citizens Committee for Broadcasting,* 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978).

In the instant case, the trustees interpreted the definition of "compensation" in the Plan and determined that the cash payment to cancel the stock option did not fall within the definition. Under the Plan, compensation is defined as follows:

**1482**

*Compensation.* The earnings paid to an employee by his employer for personal services, including bonuses and overtime, but excluding special allowances (such as moving expenses, car expenses, tuition reimbursement, meal allowances, excess group life insurance income and similar items).

Plaintiff argues that the trustees violated the plain language and intent of this clause by excluding the stock option cancellation payment as compensation. Plaintiff maintains that the options were granted in 1973 and 1976 as "incentive compensation," designed to keep plaintiff in the employ of Chemetron and to encourage him to maintain or increase the profitability of the corporation. Plaintiff concludes that the payment marked the liquidation of this "compensation."

Defendants view the payment in a different light. They argue that the payment was not compensation for personal services but a contractual settlement negotiated as part of the merger agreement. It is this interpretation of the stock option cancellation agreement that we must consider in determining whether the decision of the trustees was arbitrary and capricious.

Our review requires us to make certain interpretations of Chemetron's actions in providing the stock option plan to its key officers. If the plan was not offered as a form of compensation, the termination of the plan and the payment cannot result in compensation. The stock option plan's stated purpose was "to aid in attracting, retaining and developing a management capable of assuring the future success of the Company by providing to selected key employees of the Company and its subsidiaries an additional incentive to continue and increase their efforts on the Company's behalf, to remain in the employ of the Company or its subsidiaries and to enlarge their proprietary interest in the Company." Under the *quid pro quo* definition of "compensation" in the Retirement Plan, *i.e.,* pay for personal services, the stock option plan appears to represent compensation to the employee.

It must be noted that, under the stock option plan, the employee was given an option to buy stock at a stated price rather than stock. The employee had the power to exercise the option at any time. Rather than committing personal capital by immediately exercising the option, the employee could wait until the market price increased to make the exercise more attractive. In other words, the stock option offer was the compensatory act by the corporation, but compensation was realized only when the employee exercised the option.

Turning to the facts, we believe that plaintiff was compensated in 1973 and 1976 by inclusion in the stock option plan. However, a legitimate question arises as to whether this compensation was ever realized. Plaintiff never exercised the option to the outstanding shares prior to the date of the cancellation agreement. Indeed, he was paid $423,250 to "surrender[s] to Chemetron ... all of his rights under each of the Options." *See* Option Cancellation Agreement, Exhibit A to Stipulation for Trial. The payment was not compensation for personal service; the *quid pro quo* was the surrender of his stock option rights.

Further, the cancellation agreement did not compensate plaintiff at the market value of the stock at the time. The agreement specified that plaintiff would receive a price equal to the average of the five highest of the last sale prices for Chemetron common stock on each of the 15 full trading days immediately preceding the date of merger. This was not the price existing on the date of the agreement. The price appears to have been negotiated as part of an arms-length agreement.

According to Alan K. Brown, Allegheny's director of compensation and benefits, the payment "was in the nature of a contract right and was not for the personal services rendered and the definition (or compensation in the Pension plan) clearly talks about personal services being the foundation of compensation for the retirement plan." *See* deposition of Alan K. Brown, at p. 38. Clayton A. Sweeny, a member of the pension plan committee, also stated that the

payment was viewed as contractual in nature and not as compensation for personal services. *See* Exhibit C to Stipulation for Trial, letter of Clayton A. Sweeney to John H. Malmrose, Esquire, of March 14, 1983.

Given the foregoing, we find that the interpretation of the trustees was rational and not arbitrary or capricious. In so holding, we emphasize that we are not finding that the payment was not compensation, but only that the trustees' interpretation resulted from consideration of the relevant factors and was not a clear error of judgment. *Bowman, supra.* Indeed, we may disagree with the interpretation, but an interpretation of a plan "should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan." *Gaines v. Amalgamated Insurance Fund,* 753 F.2d 288, 289 (3d Cir.1985).

Finally, plaintiff argues the trustees' interpretation is arbitrary and irrational because Revenue Ruling 73–146 of the Internal Revenue Service states that such payments operate as the satisfaction of a preexisting obligation of a compensatory nature. The revenue ruling is irrelevant, however, because the trustees were charged with interpreting the definition of "compensation" in the Retirement Plan and not the definition in the Internal Revenue Code.

### C. *Summary*

We find that defendants' interpretation of the Chemetron Retirement Plan—that payments under a stock option cancellation agreement are not compensation for personal services—is a rational interpretation and is not contrary to the plain language of the Plan. Because we find that defendants' interpretation is consistent with the Plan's purpose of awarding pension benefits based on compensation paid for personal services, and because we find that defendants' interpretation was neither arbitrary nor capricious, defendants' motion for summary judgment will be granted.

A written order will follow.