JOHNSTON DEVELOPMENT GROUP, INC., et al., Plaintiffs,

v.

CARPENTERS LOCAL UNION NO. 1578, et al., Defendants.

Civ. A. No. 89–566 (SSB).

United States District Court, D. New Jersey.

Jan. 11, 1990.

Montgomery, McCracken, Walker & Rhoads by James H. Landgraf, Cherry Hill, N.J., for defendant Kennedy Concrete Co.

John Trimble, Turnersville, N.J., for defendant Frank J. Fazzio & Sons.

Kleinbard, Bell & Brecker by Leon Dembo, W. Collingswood, N.J., and Imogene E. Hughes, Philadelphia, Pa., for defendant Eastern Transit Mix.

Capehart & Scatchard, P.A., Mount Laurel, N.J., for defendant Redy Mixt Konkrete, Inc.

Laurence E. Rosoff, Cherry Hill, N.J., for defendant Ernest R. Miles Concrete Co.

Brown & Connery by John J. Mulderig, Westmont, N.J., for defendant Silvi Concrete Products, Inc.

## OPINION

BROTMAN, District Judge.

Presently before the court are the "stipulations of dismissal" between plaintiffs and certain defendants. The stipulations are basically contracts which provide for compliance with other contracts for the delivery of construction materials and the disclosure of any efforts to interfere with such deliveries, allow for continuing jurisdiction, and purport to permit the court to enter "such orders or directions, including injunctions" to enforce their terms. Plaintiffs characterize the stipulations as orders of dismissal pursuant to Fed.R.Civ.P. 41(a)(2). The union defendants assert that the stipulations are injunctions in the context of a labor dispute, and therefore beyond the power of this court because of the restrictions on the subject matter jurisdiction of a federal court imposed by the Norris–LaGuardia Act. The issue raised is whether court approval of voluntary dismissals pursuant to Fed.R.Civ.P. 41(a)(2), where the dismissals are predicated on settlement agreements that provide for continuing jurisdiction to enforce the agreements with injunctive relief, violates the Norris–LaGuardia Act's prohibition against injunctions in the context of labor dispute.

Blank, Rome, Comisky & McCauley by Jerald R. Cureton, Cherry Hill, N.J., for plaintiffs.

Williams & Connolly by Aubrey M. Daniel, III, Washington, D.C., and Moss, Powers & Kugler by Robert B. Kugler, Moorestown, N.J., for defendants Carpenters Local Union No. 1578, Frank Spencer, and Ronald Jernegan.

Tomar, Seliger, Simonoff, Adourian & O'Brien by Howard S. Simonoff, Haddonfield, N.J., for defendants Cement Masons Local 699 and Anthony LaTorre, Jr.

John Raymond Lindsay, Turnersville, N.J., for defendant Erial Concrete Co.

## FACTS AND PROCEDURE

Plaintiffs Johnston Development Group, Inc. and Glassboro Development Co., Inc., are in the process of developing a residential subdivision known as "Hidden Creek." Plaintiffs employ contractors who in turn employ, for the most part, nonunion subcontractors.

In the fall of 1988, Carpenters Local 1578 began to picket the site at Hidden Creek. Plaintiffs filed unfair labor practice charges with the National Labor Relations Board (hereinafter the "NLRB" or "Board"). Plaintiffs claimed that the unions were engaging in illegal secondary labor activity in violation of sections 8(b)(4)(i) and 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(i) and (ii)(B), as amended. The NLRB investigated plaintiffs' charges, and determined that the unions were engaging in unfair labor practices. The NLRB therefore filed an injunction action with this court pursuant to section 10($l$) of the National Labor Relations Act, 29 U.S.C. § 160($l$). The NLRB and the unions thereafter reached a settlement under which the union agreed to cease picketing the Hidden Creek development site.

On February 8, 1989, plaintiffs filed the complaint in the instant action, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1962, the Sherman Act, 15 U.S.C. § 1, section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, and various pendent state tort claims. The complaint alleges that the unions' conduct exceeds mere picketing and includes extortion, violence, and threats of violence. The relief sought includes, in addition to monetary damages, a preliminary and permanent injunction.

Thereafter, members of the union, who were dressed in white decontamination suits with gas masks, began to distribute handbills at the entrance to development. The Hidden Creek site is located in Glass-

boro, New Jersey, less than one mile from the Lipari Landfill, which was, at the time, ranked first on the United States Environmental Protection Agency's Superfund cleanup list. The handbills had photographs and drawings in addition to hyperbolic, but not clearly false, language, and warned prospective home buyers of the dangers of living so close to a landfill. Except for a short statement that they were paid for by Carpenters Local 1578, the handbills made no reference the underlying labor dispute.

In response, plaintiffs amended the complaint to include the handbilling as an example of defendants' illegal activity. Plaintiffs also filed another unfair labor practice charge with the NLRB. In this instance, however, the NLRB declined to issue a complaint because it found, on the basis of *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council and NLRB*, 485 U.S. 568, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988), in substance, that the peaceful handbilling was not prohibited by sections 8(b)(4)(i) and 8(b)(4)(ii) of the National Labor Relations Act.

Plaintiffs thereafter sought a preliminary injunction prohibiting the handbilling. This court refused to issue such an injunction because it found that the handbilling grew out of a labor dispute, and therefore the Norris–LaGuardia Act deprived the court of subject matter jurisdiction to issue an injunction. *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 712 F.Supp. 1174 (D.N.J.1989).

After several conferences with this court, and after limited discovery failed to uncover the quantum of evidence this court felt was necessary to refer the matter to the United States Attorney,[1] plaintiffs presented the court with the first round of proposed consent decrees. Under the terms of those decrees, plaintiffs and various non-union defendants [2] were to be dis-

---

**1.** The court, and not the parties, had suggested referring the matter to the United States Attorney. While it would be unethical for a private party to threaten a criminal prosecution in fur-

therance of a civil suit, the court is free to refer matters warranting further investigation.

**2.** The defendants that were parties to the proposed consent decrees were Erial Concrete,

missed as defendants [3] from the case, provided they agreed not to refuse to deliver construction goods to the development site because of either an agreement with or pressure from the unions, and provided further that they disclose to plaintiffs any attempts by the unions or their "agents, members, employees or anyone acting in concert" with them to prevent the delivery of construction goods. Finally, the consent decrees provided for continuing jurisdiction and were cast in terms of a permanent injunction.

The unions strongly objected to the entry of the consent decrees on several grounds. First, the unions argued that the consent decrees were not in the public interest. The unions asserted that the decrees were the product of frivolous litigation that had no factual basis. The suit against the contractors and suppliers, the unions argued, was extortion by litigation; the non-union defendants are relatively small companies which cannot afford to pay the fees generated by the complex litigation of the type involved in this case. Thus, the unions argued, plaintiffs were able to force the concrete suppliers to agree to the consent decrees, the terms of which would otherwise have been unacceptable. The unions further argued that the consent decrees were impermissible restraints of trade in violation of the Sherman Act, and were in essence vertical restrains of trade in that the home developers would control their source of concrete supplies.

The second, and more serious, challenge to the consent decrees was jurisdictional.

The unions claimed that the decrees adjudicated rights in the context of a labor dispute in violation of the Clayton Act.[4] The unions also characterized the decrees as regulations of conduct within the exclusive jurisdiction of the NLRB. The unions finally argued that the consent decrees were unconstitutional abridgements of free speech in that they would have a chilling effect on the lawful conduct of members of the unions.

Plaintiffs countered that the consent decrees were merely private agreements that had no impact on the protected conduct of the unions.

The court expressed concern that the consent decrees might be, in effect, injunctions, in that plaintiffs were unable to articulate why the consent decrees did not contemplate injunctions in the context of a labor dispute when that would, in all likelihood, be the relief sought in the event that the parties to the decrees did not comply with their terms. The court, however, never ruled on the consent decrees.

Thereafter, plaintiffs submitted the instant stipulations of dismissal, which superceded the consent decrees.[5] Plaintiffs assert the instant stipulations are voluntary dismissals pursuant to Fed.R.Civ.P. 41(a)(2) predicated on private settlement agreements. The unions claim that the stipulations are, in fact, the consent decrees with different titles. The unions stress the similarities between the provisions of the stipulations and the decrees submitted in August,[6] and argue that the function and pur-

---

Clemente Transit Mix, Inc., Frank J. Fazzio & Sons, Inc., Earnest R. Miles Concrete Company, Easter Transit Mix, and Kennedy Concrete.

**3.** The various non-union defendants are alleged to be part of the RICO enterprises and the antitrust conspiracies pleaded in the complaint. Although the non-union defendants may no longer be party defendants, they will still have some role in the litigation, if only as witnesses.

**4.** Section 20 of the Clayton Act states:
    No restraining order or injunction shall be granted by any court of the United States, or a judge or judges thereof, in any case between an employer and employees, or between employers and employees, or between employers and persons seeking employment, involving

or growing out of, a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application, for which injury there is adequate remedy at law ...
    29 U.S.C. § 52.

**5.** The stipulations submitted apply only to Fazzio, Erial, Miles, and Clemente. The court considers the consent decrees submitted with respect to Eastern and Kennedy to have been withdrawn.

**6.** The court did not rule on the prior consent decrees, and therefore to compare them to the prior consent decrees is not entirely an appeal to the law of the case. The court did express

pose of the decrees is to enjoin certain parties conduct in the context of a labor dispute.

## DISCUSSION

It is important to stress from the outset what this set of motions does not involve. Resolution of the instant motions does not involve injunctive relief under RICO, which makes no provision for private equitable relief in any event. *Curley v. Cumberland Farms, Inc.,* 728 F.Supp. 1123, 1137 (D.N.J.1989). Although injunctive relief is available to private parties under Clayton Act, the court need not rely on that authority. The only question now before the court is whether to give permission for plaintiffs to dismiss voluntarily certain defendants pursuant to Fed.R.Civ.P. 41(a)(2).

The "determination whether to grant a motion for voluntary dismissal rests within the discretion of the district court." *Tyco Laboratories, Inc. v. Koppers Co., Inc.,* 627 F.2d 54, 56 (7th Cir.1980) (*per curiam*). *See also Hamilton v. Firestone Tire & Rubber Co., Inc.,* 679 F.2d 143, 145 (9th Cir.1982).

■ Rule 41(a) provides: "[e]xcept as provided in paragraph (1) of this subdivision, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." As the Fourth Circuit has noted, "[s]ince Rule 41(a)(2) only applies when an answer or a motion for summary judgment has been filed by the defendants, the mere filing of an answer or a motion for summary judgment could not, without more, be a basis for refusing to dismiss without prejudice." *Andes v. Versant Corp.,* 788 F.2d 1033, 1036 n. 4 (4th Cir.1986). Further, a motion for dismissal without prejudice "should not be denied absent substantial prejudice to the defendant." *Andes,* 788 F.2d at 1036 (citation omitted). *See Hamilton,* 679 F.2d at 145; 9 C. Wright & A. Miller, Federal Practice & Procedure § 2364 at p. 165 (1971).

The pending motions present issues slightly different than those presented by the standard motion for voluntary dismissal. Here, it is not the party to be dismissed that opposes the motion; other defendants object to the entry of the dismissals. These objections are directed not to the dismissals *per se,* but at the provision for court enforcement of the settlement agreements.

The stipulations at issue have at least two of the traditional indicia of consent decrees. First, each stipulation "looks like and is entered as a judgment...." *Local Number 93, International Assoc. of Firefighters v. City of Cleveland,* 478 U.S. 501, 518, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986). The stipulations are presented to the court pursuant to Fed.R.Civ.P. 41(a)(2), which requires a court order. This alone cannot be the basis for the unions' objections, for even if there were no provision for continuing jurisdiction, the court would still be required to "approve" the dismissals under the clear mandate of Fed.R. Civ.P. 41(a)(2).

The second and more important manner in which the stipulations resemble consent decrees is in the mechanism provided for their enforcement. As Judge Becker explained the distinction between a private settlement and a consent decree in *McGoff v. Rapone,* 78 F.R.D. 8 (E.D.Pa.1978):

A consent decree is of course a continuing order, one having prospective effect. A party aggrieved by the other party's non-compliance may obtain an order to show cause why the noncomplying party should not be held in contempt, thereby placing on the party the burden of proving compliance or excuse from compliance. In contrast, when a settlement agreement made part of a stipulation to dismiss has been breached, the aggrieved party has the burden of persuading the court to reopen the matter "in the interest of justice" on a 60(b)(6) motion, as well as subsequently demonstrating that a breach of the settlement terms has

concerns in August about the consequences of the decrees should they be violated. Specifically, the court wanted to know what would happen when plaintiffs returned to the court to seek injunctive relief.

occurred. A subsequent order must be obtained enjoining the adversary from noncompliance. Only then will the contempt remedy lie.

*Id.* at 24. *City of Cleveland,* 478 U.S. at 518, 106 S.Ct. at 3073.

■ It is not clear that the stipulations of dismissal in this case are, in fact, consent decrees. The stipulations allow for the parties to apply "to this Court at any time for such orders or directions, including injunctive relief, as may be necessary or appropriate for the construction or carrying out" of the stipulations. As the court understands the agreements, the terms provide that any party not complying with them could at that time become the subject of a court action including an injunction; the stipulations do not purport to impose injunctions at the present time. Nor is it necessary for the court to decide at this time what remedy will be implemented for future violations. To do so would be to render an advisory opinion about a matter not now involved in dispute, and therefore not a case or controversy. *See Princeton University v. Schmid,* 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (*per curiam*).

■ The objections directed to the origins of the agreements are for the settling parties, and not the unions, to raise. The relationship of the parties to the stipulations, and the manner in which those agreements were reached, is not a matter which the unions have standing to challenge.[7]

The settlement agreements do contemplate the use of this court's equitable jurisdiction, and the court is obligated to consid-

er the claims of third parties that the settlements may harm them. *Donovan v. Robbins,* 752 F.2d 1170, 1176 (7th Cir.1985). The court must be satisfied that the decree is reasonable. *Id.* at 1176–77.

■ Whether one characterizes the stipulations in the instant case as settlement agreements or consent decrees has virtually no legal or practical significance in and of itself, because, in most cases, a court is free to enforce with equitable decrees the terms of a private settlement. As Judge Becker has noted, a "considerable line of authority has recognized the justified reliance of parties in their settlement agreements by giving courts the power to reopen cases when such agreements have been breached." *McGoff,* 78 F.R.D. at 23. Judge Becker further observed:

> [W]here the stipulation for dismissal contains conditions agreed to by the parties, such as settlement terms, a court may reinstate the case upon a rule 60(b) motion by either party for purposes of enforcing the settlement....

*Id.* (quoting 5 Moore's Federal Practice § 41.17 at 41–229).

The Third Circuit recently observed that "[a]lthough a district court does not have continuing jurisdiction over disputes about its orders merely because it had jurisdiction over the original dispute, a stipulated agreement signed by the court does allow a district court to retain jurisdiction." *Washington Hospital v. White,* 889 F.2d 1294, 1299 (3d Cir.1989).[8] The Third Circuit went on to quote with approval the following

---

7. This might be not be the case if there were evidence to suggest that the settlement agreements were collusive attempts to obtain the court's exercise of injunctive powers against the unions. As the court has made clear from the outset of this litigation, it will not enjoin protected union activity. The court is equally aware of the expense of this litigation, and the desire of the non-union defendants to escape its costs.

8. The unions' argument that the stipulations do not allow the court to enter injunctions to enforce the settlements in the absence of express statutory or constitutional authority, *see* Reply Brief of Unions Defendants in Opposition to

Plaintiffs' Second Motion for Dismissal at 23, is not supported in the law. In *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483, the Supreme Court held that the district court had erred in modifying a decree where the modification did "not merely enforce the agreement of the parties as reflected in the consent decree," *id.* at 575–76, 104 S.Ct. at 2586, and where there was no independent basis for jurisdiction. *Stotts* did not address the power of a court to enter an injunction consistent with the terms of a settlement agreement; if anything, *Stotts* implicitly accepted the proposition that a court may enter an injunction to effect specific performance of a consent decree.

**1148**

language from *McCall–Bey v. Franzen,* 777 F.2d 1178, 1188 (7th Cir.1985):

> we have expressed no doubt of the power of a district judge to dismiss a lawsuit conditionally, retaining jurisdiction to effectuate the terms of settlement agreed to by the parties. Nor do we think there is any magic form of words a judge must intone in order to make the retention of jurisdiction effective. All that is necessary is that it be possible to infer that he [or she] did retain jurisdiction.

The Third Circuit finally noted a "court must be able to protect the integrity of a stipulation of dismissal that is functionally equivalent to a consent order or consent decree when it has retained jurisdiction and a party alleges that another party is not obeying the terms of the agreement." *Id.* (citation omitted).

The decision to approve the stipulations of dismissal and to retain jurisdiction over them does not compel any conclusion in terms of the Norris–LaGuardia Act's prohibition against the entry of injunctions in the context of a labor dispute. In the context of deciding "whether, assuming, *arguendo,* that § 706(g) [of Title VII of the Civil Rights Act of 1964, 78 Stat. 261, as amended, 42 U.S.C. § 2000e–5(g) ] would bar a court from ordering such race-conscious relief after trial in some of these instances, § 706(g) also bars a court from approving consent decree entered into by the employer providing for such relief," 478 U.S. at 517 n. 8, 106 S.Ct. at 3072 n. 8, the Supreme Court observed:

> The question is not whether we can label a consent decree as a "contract" or a "judgment," for we can do both. The question is whether, given their hybrid nature, consent decrees implicate the concerns embodied in § 706(g) in such a way as to requires treating them as "orders" within the meaning of that provision.

*Id.* at 519, 106 S.Ct. at 3073.

■ Applying the functional *City of Cleveland* analysis to the issues presented in the instant motions, the court concludes that the instant stipulations of dismissal do not implicate the concerns embodied in the Norris–LaGuardia Act's prohibition on injunctions in cases arising out of labor disputes.

The Third Circuit and this court have repeatedly recognized the strong public policy favoring pretrial settlement of private litigation. *E.g., Eckersley v. WGAL TV Inc.,* 831 F.2d 1204, 1209 (3d Cir.1987); *Bank of America National Trust and Savings Assoc. v. Hotel Rittenhouse Assocs.,* 800 F.2d 339, 344 (3d Cir.1986); *State of New Jersey Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.,* 668 F.Supp. 404, 407 (D.N.J.1987). This policy creates a presumption that settlements ordinarily should be approved. *Donovan,* 752 F.2d at 1177.

■ The court finds it difficult to accept the unions' argument that they are not consensual because this is "extortion by litigation." While the court is aware of the expense of this litigation, it is equally clear that plaintiffs have a first amendment right to maintain it. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

The agreements embodied in the stipulations do not apply to the unions, because the unions were not parties to them. *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 575, 104 S.Ct. 2576, 2586, 81 L.Ed.2d 483 (1984); *United States v. Ward, Baking Co.,* 376 U.S. 327, 334, 84 S.Ct. 763, 768, 11 L.Ed.2d 743 (1964). The agreements apply only to the parties thereto. Accordingly, even if a settling party agrees with a union not to make a delivery, although the settling party might subject itself to penalties under the agreement, the union could not be liable for acting in concert with the settling party to violate the agreements. These agreements are not injunctions, and thus the law concerning the liability of non-parties for violating injunctions, *see* 11 C. Wright & A. Miller § 2956

(1973), has no application. Apparently the settling defendants have chosen to risk liability for failure to comply with these agreements rather than to face the certain expense of litigation in addition to the possibility of an adverse judgment. It is not for this court to interfere with this decision.[9]

These agreements, if carried out, will unquestionably undermine the effectiveness of the unions' concerted action. The unions, however, would be unable to attack the agreements if they were executed privately. The court recognizes that the "Supreme Court has traditionally read the phrase 'involving or growing out of a labor dispute' very broadly." *Johnston Development Group*, 712 F.Supp. at 1180 (citing *Burlington Northern Railroad Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 440–42, 107 S.Ct. 1841, 1848–49, 95 L.Ed.2d 381 (1987)). It may well be that the court will lack the jurisdiction to enter an injunction enforcing the terms of the settlement agreements if the parties do not adhere to the terms of the agreements; monetary damages may be the sole remedy. That issue, however, is not presently before the court, and the court intimates no view whatsoever as to the extent of any remedy, if any, for violations of the settlement agreements.[10]

The unions also attack the settlement agreements as against the public interest on the following grounds:

> In the instant case, the stipulations clearly constitute contracts or combinations between plaintiffs [and the settling parties]. There should be no question but that this combination produces an adverse, anticompetitive effect within the South Jersey residential home building concrete industry. [The settling defendants] can no longer refuse to sell any concrete to *any builder in South Jersey* where a labor dispute exists. Although the stipulations nominally leave open the right of the concrete suppliers to refuse to deal for other reasons, the stipulations also require that the concrete suppliers bear the burden of proof in showing that they have not violated the agreement. In reality, the defendant concrete suppliers will be obligated to supply concrete, within the 20–mile radius of the plant, to any builder whatsoever. The plaintiff developers have thus acquired captive suppliers of raw materials through threats and coercion [of expensive litigation]. The effect of this is to restrain competition among concrete suppliers, since the coercion will substantially lessen the suppliers' ability to raise prices or to make independent business decisions.

Memorandum of Law of Union Defendants in Opposition to Plaintiffs' Second Motion For Dismissal of Certain Defendants at 17 (emphasis in original).

█ Contrary to the unions' suggestion, the agreements are not contracts or agreements in restraint of trade. The stipulations simply prohibit certain contractors and concrete suppliers from refusing to supply products because of pressure from the union. The concrete suppliers remain free to compete in areas of price, quality, and speed of delivery.

The court recognizes that the unions are extremely concerned about the effect of the stipulations. Although the court does not deem these concerns so weighty as to justify refusing to enter the voluntary dismissals, the court will nonetheless order, as a condition of dismissal, that the parties to

**9.** That some non-union defendants will not be the subject of voluntary dismissals while others have joined in the unions' motion for summary judgment indicates that non-union defendants have been able to make independent decisions.

**10.** If and when that issue does arise, the court will consider the unions' arguments that an order under the settlement agreements enjoining the non-union defendants from refusing to make deliveries would violate the Norris–La-Guardia Act either because such an order would deprive the union of a significant economic weapon or because its ultimate objective was to control the concerted activity. *See United Steelworkers of America v. Bishop*, 598 F.2d 408, 414–15 (5th Cir.1979); *Bituminous Coal Operators' Assoc., Inc. v. International Union, United Mine Workers of America*, 585 F.2d 586, 594 (3d Cir.1978); *Lee Way Motor Freight v. Keystone Freight Lines*, 126 F.2d 931 (10th Cir.), *cert. denied*, 317 U.S. 645, 63 S.Ct. 37, 87 L.Ed. 519 (1942).

**1150**

the agreements notify the unions of any action to enforce the settlement agreements before such action is brought before this court.

CONCLUSION

For the foregoing reasons, the court will grant plaintiffs' motion to dismiss certain defendants. This dismissal is conditioned on plaintiffs' providing notice to the unions of any attempts to enforce the agreements, so that the unions will be free to raise their arguments concerning the limits of this court's jurisdiction at a later time, should that be necessary. The court will retain jurisdiction over the settlement agreements.

An appropriate order will be entered.

ORDER

This matter having come before the court on the motion of plaintiffs to dismiss voluntarily defendants Frank J. Fazzio & Sons, Inc., Earnest R. Miles Concrete Company, Erial Concrete, and Clemente Transit Mix, Inc. pursuant to Fed.R.Civ.P. 41(a)(2); and

The court having considered the briefs and arguments of all concerned parties; and

For the reasons set forth in the court's opinion of this date;

IT IS on this 10th day of January, 1990 hereby

ORDERED that the COMPLAINT IS DISMISSED WITHOUT PREJUDICE as to defendants Frank J. Fazzio & Sons, Inc., Earnest R. Miles Concrete Company, Erial Concrete, and Clemente Transit Mix, Inc. pursuant to Fed.R.Civ.P. 41(a)(2); and it is

FURTHER ORDERED that the parties to the stipulations shall give notice to the unions of any attempt to seek court aid in the enforcement of such stipulations before making any application to the court.

No costs.