Vincent and Joanne ALBANESE, et al., Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Pat and Ann BERARDI, Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Robert and Gertrude COLONNA, Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Dennis and Linda DiSABATINO, et al., Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Robert and Ann PANEK, et al., Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

James and Carmella PAPPERT, Plaintiffs,

v.

BENCHMARK CORPORATION, et al., Defendants.

Louis and Alice PENNA, et al., Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Salvatore and Clara VOLPE, Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Civ. A. Nos. 85–0914(SSB), 85–3291(SSB), 85–0870(SSB), 85–0947(SSB), 85–0948(SSB), 85–5134(SSB), 85–0915(SSB) and 85–0946(SSB).

United States District Court, D. New Jersey. April 11, 1989.

Robert J. Sugarman, Sugarman & Cohen, Philadelphia, Pa., for plaintiffs.

Paschon, Feurey & Rosetto by Richard L. Costanzo, Toms River, N.J., for defendant Gloucester Tp.

## OPINION

BROTMAN, District Judge.

Plaintiffs are homeowners who purchased property near a municipally owned landfill in Gloucester Township, Camden County, New Jersey. They filed these eight lawsuits against the Township of Gloucester ("the Township") and other defendants seeking damages stemming from alleged fraud inducing their purchases, and from operation of the landfill. Presently before the court is the Township's motion

for summary judgment on plaintiffs' claims based on the Racketeer Influenced and Corrupt Organizations law ("RICO"), 18 U.S.C. §§ 1961–1968 (1982 & Supp. IV 1986). For the reasons set forth below, the court will grant the Township's motion and will dismiss the RICO claims against it.

## I. FACTS AND PROCEDURE

Between 1975 and 1980 the Township owned and Gloucester Environmental Management Services, Inc. ("GEMS") operated the GEMS landfill. The plaintiffs each purchased real estate in or near the Briar Lake subdivision near the landfill between 1978 and 1982. Plaintiffs charge that the Township and other defendants—including a developer and a mortgage lender—knew that the landfill presented a health hazard but nonetheless sanctioned and facilitated the development of residential housing in its vicinity. In addition to their real estate fraud claims, plaintiffs seek damages from the Township and other defendants based on those defendants' use and control of the GEMS landfill. The court has stayed plaintiffs' use and ownership claims against all defendants pending resolution of their real estate fraud claims. Plaintiffs' allegations are quite detailed; however, a more thorough recitation of the facts underlying these cases is unnecessary to deciding the instant motion.

Plaintiffs charge that the Township and other real estate fraud defendants violated RICO, 18 U.S.C. § 1962(a), (c), and (d), and seek to recover from them treble damages, costs, and attorney's fees pursuant to RICO's civil liability provision, 18 U.S.C. § 1964(c). Plaintiffs contend that the Township engaged in a pattern of racketeering activity by fraudulently facilitating development of the Briar Lake subdivision and by covering up the hazard presented by the landfill. The Township has now moved for summary judgment on plaintiffs' RICO claims. Neither the plaintiffs

nor the Township addressed in their original submissions the issue of whether a municipality could be liable under section 1962, and the court requested further briefing on that question. The court now finds that issue dispositive of the Township's motion.

## II. DISCUSSION

The question squarely before the court is whether a municipality can violate 18 U.S.C. § 1962(a), (c), and (d), and therefore be subject to civil RICO liability under section 1964(c).[1] The Township argues that it cannot be held liable for violating any of those three subsections because a municipality cannot have criminal intent, and therefore it is incapable of committing a predicate racketeering offense. It further argues that public policy considerations bar municipal liability for treble damages. Plaintiffs respond by drawing an analogy to antitrust law and by arguing that, even if municipal liability were precluded under section 1962(c) (prohibiting conduct of an enterprise through racketeering), it is nonetheless permissible under section 1962(a) (prohibiting person to cause an enterprise to benefit from racketeering activity), and therefore under the conspiracy provision of section 1962(d). The court will first examine whether a municipality can be liable under section 1962(c), it will then address whether the same analysis is appropriate for section 1962(a), and finally it will address the question of municipal liability under section 1962(d). Because the court will conclude that a municipality is incapable of violating section 1962(a), (b), and (d), and therefore cannot be civilly liable under section 1964(c), it need not address whether a municipality can be liable for treble damages under RICO.

### A. Section 1962(c)

To prove a violation of section 1962(c)[2] plaintiffs must establish that the Township

---

**1.** RICO's civil liability provision states:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (1982).

**2.** That section provides:

(1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Racketeering activity means any of several criminal acts proscribed by state or federal law and enumerated in section 1961(1).[3] To determine whether the Township can violate section 1962(c), the court must determine whether a municipality is capable of committing a crime and therefore capable of committing one of the predicate racketeering acts enumerated in section 1961(1).

At least three courts recently passing on the precise question presently before this court have held that a municipality is incapable of the criminal intent required for conviction of any of the acts constituting racketeering activity, and therefore cannot

be charged with violating section 1962(c). *In re CitiSource, Inc. Securities Litigation*, 694 F.Supp. 1069, 1079–80 (S.D.N.Y. 1988); *Thacker Eng'g Inc. v. Chicago Housing Auth.*, No. 87 C 365, slip op., 1988 WL84714 (N.D.Ill. Aug. 11, 1988) (available on LEXIS); *Massey v. City of Oklahoma City*, 643 F.Supp. 81 (W.D.Okla.1986). The court in *CitiSource* explained, "The issue of intent is the Achilles' heel of the plaintiff seeking to impose RICO liability upon a municipal corporation under 18 U.S.C. § 1962(c). Unlike an ordinary corporation, a municipal corporation is incapable of the criminal intent necessary to support the alleged predicate offenses." 694 F.Supp. at 1079. The *CitiSource* court further noted, "This result obtains because the criminal intent of its agents will not be imputed to a municipal corporation, as it would to

---

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or in the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1982).

**3.** RICO defines racketeering activity as

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1029 (relative to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstructing of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), sec-

tion 1513 (relating to retaliating against a witness, victim, or an informant), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), sections 2251–2252 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), section 2314 and 2315 (relating to interstate transportation of stolen property), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act....

18 U.S.C. § 1961(1) (1982 & Supp. IV 1986).

an ordinary corporation." *Id.* at 1080. As the *Massey* court explained, a municipality is incapable of forming the mens rea or criminal intent necessary to perform an act of racketeering activity as defined by § 1961 of the RICO statute. The officials of the City, the mayor, the City councilmen, etc., have the capacity to perpetrate this type of activity, but the City, the body politic, could not.

643 F.Supp. at 85; *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 101 S.Ct. 2748, 2756, 69 L.Ed.2d 616 (1981) (summarizing case that noted "the existence of 'respectable authority' to the effect that municipal corporations 'can not, as such, do a criminal act or a willful and malicious wrong ...' ") (quoting *Hunt v. City of Boonville*, 65 Mo. 620, 624 (1887)).

Plaintiffs urge the court not to follow *CitiSource, Thacker,* and *Massey* by analogizing to antitrust law.[4] They cite two antitrust cases, *Community Communications Co. v. City of Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), and *Duke & Co. v. Foerster*, 521 F.2d 1277 (3d Cir.1975), for the proposition that a municipal corporation can be criminally liable. The court finds that neither case stands for that proposition. The Supreme Court in *City of Boulder* held that the federalism-based doctrine of *Parker v. Brown*, 317

U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), which immunizes states from civil antitrust liability, does not insulate home-rule cities from such liability. 455 U.S. at 56–57, 102 S.Ct. at 843–44. The Third Circuit in *Duke & Co.* held that the same federalism-based doctrine did not immunize certain municipal defendants from civil antitrust liability. There is no question that in these cases the plaintiffs could maintain a civil cause of action for money damages for a violation of section 1 of the Sherman Act, 15 U.S.C. § 1.[5] However, these cases do not hold that a municipal corporation can be criminally liable for an antitrust violation, and they do not hold that a municipal corporation can be civilly liable under a theory requiring as an element of proof that they were chargeable with a criminal offense.

Pursuant to section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States...." Similarly, pursuant to RICO's section 1964(c), "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...." The Clayton Act deems a violation of any antitrust provision a civil

---

**4.** The analogy is particularly apt because RICO's civil remedy provision was adapted from the section 4 of the Clayton Act, 15 U.S.C. § 15(a) (1982). *See generally Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 486–88, 105 S.Ct. 3275, 3280–81, 87 L.Ed.2d 346 (1985).

**5.** The result would be different today. Congress limited the availability of civil antitrust remedies against municipalities by enacting the Local Government Antitrust Act of 1984, Pub.L. 98–544, 98 Stat. 2750 (codified at 15 U.S.C. §§ 34–36 (Supp. IV 1986)). That law provides in part, "No damages, interest on damages, costs, or attorney's fees may be recovered under sections 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, official or employee thereof acting in an official capacity." 15 U.S.C. § 35(a). The House Judiciary Committee summarized the purpose of this legislation as follows:

> The Committee acted in response to concerns with Supreme Court decisions over the past few years that appear to have limited the extent that antitrust immunity applicable to

the States will be accorded to local governments. Those decisions have spawned an increasing number of antitrust suits, and threatened suits, that could undermine a local government's ability to govern in the public interest. Most of the suits instituted by private parties have sought treble damages.

H.R.Rep. No. 98–695, 98th Cong., 2d Sess. 2, *reprinted in* 1984 U.S.Code Cong. & Admin. News 4602, 4603.

Plaintiffs claim that congressional action to immunize municipalities for liability for money damages under the Clayton Act coupled with its failure to change the RICO civil liability provision indicates its intention that municipalities be subject to civil liability under RICO. The court finds the argument unpersuasive. First, the court can draw no inference from congressional inaction. *See Alken v. Lerner*, 485 F.Supp. 871, 877 (D.N.J.1980) ("failure of Congress to enact legislation ... is not always a reliable indicator of legislative intent"). Second, the analogy between civil liability under RICO and under the Clayton Act fails as discussed *infra.*

wrong, and RICO deems violation of 18 U.S.C. § 1962 a civil wrong; however, that is where the similarity ends. To establish a prima facie civil case under the Clayton Act for a violation of section 1 of the Sherman Act, as charged in *City of Boulder* and *Duke & Co.*, a plaintiff must "allege and prove that two or more parties have entered into a contract, combination or conspiracy that unreasonably restrains interstate or foreign commerce, resulting in injury to his business or property." *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 88 F.R.D. 38, 42 (S.D.N.Y. 1980) (citing *Northern Pacific Ry. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed. 2d 545 (1958)). In contrast, as part of a prima facie civil case under RICO a plaintiff must prove "conduct that is 'chargeable' or 'indictable,' and 'offense[s]' that are 'punishable,' under various criminal statutes." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488, 105 S.Ct. 3275, 3280, 87 L.Ed.2d 346 (1985) (quoting 18 U.S.C. § 1961(1)). Civil liability under RICO requires a further step because a violation of section 1962(c) requires proof of a pattern of racketeering activity, which in turn requires proof of a violation of a criminal law. This last step distinguishes RICO from antitrust law because a civil RICO plaintiff must show criminal intent while a civil antitrust plaintiff need not.

The court finds highly persuasive the argument against municipal RICO liability set forth in *CitiSource* and *Massey*. It is axiomatic that a corporation can act only through its employees. The Supreme Court has held, "No doubt a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent, necessary to warrant the imposition of such damages, is brought home to the corporation." *Lake Shore & M.S. Ry. v. Prentice*, 147 U.S. 101, 111, 13 S.Ct. 261, 264, 37 L.Ed. 97 (1893). The Court explained,

> The president and general manager, or, in his absence, the vice president in his place, acting wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it that any wanton, malicious, or oppressive intent of his, in doing wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself....

*Id.* at 114, 13 S.Ct. at 265. In contrast, the Supreme Court in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), held that municipal corporations could not be liable for punitive damages at common law:

> It was generally understood by 1871 that a municipality, like a private corporation, was to be treated as a natural person subject to suit for a wide range of tortious activity, but this understanding did not extend to the award of punitive or exemplary damages. Indeed, the courts that had considered the issue prior to 1871 were virtually unanimous in denying such damages against a municipal corporation.

*Id.* at 259–60, 101 S.Ct. at 2755–56 (footnote omitted). In explaining the common law rule, the Court invoked with approval a nineteenth century decision of the Missouri Supreme Court:

> "[T]he relation which the officers of a municipal corporation sustain toward the citizens thereof for whom they act, is not in all respects identical with that existing between the stockholders of a private corporation and their agents; and there is not the same reason for holding municipal corporations, engaged in the performance of acts for the public benefit, liable for the willful or malicious acts of its officers, as there is in the case of private corporations."

*Id.* at 261–62, 101 S.Ct. at 2756–57 (quoting *Hunt v. City of Boonville*, 65 Mo. 620, 625 (1877)). The essence of the common law rule is that the criminal intent of an agent of a municipal corporation can never be imputed to the municipal corporation itself because the retribution for such a wrong should not "be visited upon the shoulders of blameless or unknowing taxpayers." *Id.* at 267, 101 S.Ct. at 2760. That rule renders a municipality incapable of being indicted or charged with a criminal act and

therefore makes it impossible for a municipality to violate RICO's section 1962(c). Consequently, the Township cannot be civilly liable under section 1964 for violating that subsection.

### B. *Section 1962(a)*

Under section 1962(a),[6] "a 'person' (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or operation of an enterprise affecting commerce." *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 402 (7th Cir.1984) (emphasis deleted), *aff'd per curiam*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The Third Circuit cited this passage with approval in *Petro–Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349, 1360 (3d Cir.1987), wherein it held that a corporation could be liable under section 1962(a) under both a respondeat superior theory and an aiding and abetting theory. *Id.* at 1361. The court explained that a corporation can be both a "person" and an "enterprise" under section 1962(a), *id.*, and " 'therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations.' " *Id.* at 1360 (quoting *Haroco*, 747 F.2d at 402). The result of this analysis is that a corporation-enterprise can be " 'liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instru-

ment of racketeering.' " *Id.* (quoting *Haroco*, 747 F.2d at 402).

Plaintiffs misconstrue the *Haroco* analysis to render the Township liable either as an aider and abettor or under the respondeat superior doctrine. Their view is in part based on their misreading of *In re CitiSource, Inc. Securities Litigation*, 694 F.Supp. 1069 (S.D.N.Y.1988), as allowing municipal liability under section 1962(a) but not under section 1962(c). After deciding that New York City was incapable of violating section 1962(c), the *CitiSource* court rejected the possibility of respondeat superior liability under section 1962(c), *id.* at 1080, but appended a footnote stating:

> This result does not allow a culpable entity to escape all liability under RICO. Where an entity is alleged to have been an active perpetrator, and not merely a passive instrument of the racketeering activity, it may face liability under § 1962(a).

*Id.* n. 16. That footnote does not refer to municipal liability, but only to liability in general, and in this court's reading was not intended to address municipal liability. Read in context, the *CitiSource* court was merely expounding on a general principle— that under section 1962(a) a person can be both the person and the enterprise—without attempting to or intending to apply it to the question of whether a municipality is capable of violating section 1962(a).

To be liable as a "person" under section 1962(a), the Township must have received income from a pattern of racketeering activity in which it participated as a principal. *See Haroco*, 747 F.2d at 402. As set out above, *see supra* section II.B, a municipali-

---

**6.** That section provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of invest-

ment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1962(a) (1982).

ty is incapable of committing an act of racketeering activity because it cannot form the requisite criminal intent to commit such an act. Therefore, the Township cannot be civilly liable for a violation of section 1962(a).

### C. *Section 1962(d)*

Section 1962(d) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C.A. § 1962(d) (West Supp.1989). "The mental element of conspiracy is twofold: there must be both intent to conspire and intent to commit the underlying offense." *United States v. Inadi*, 748 F.2d 812, 817 (3d Cir.1984), *rev'd on other grounds*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). For the same reasons that a municipality cannot have the culpable mental state to violate subsections (a) and (c), it can have neither the general intent to enter into a criminal conspiracy nor the specific intent to violate one of the substantive provisions of section 1962. Consequently, the Township cannot be civilly liable for violating section 1962(d).

### III. CONCLUSION

Because the Township is a municipality, it cannot form the requisite mental state to commit an act of racketeering activity, and it is therefore incapable of violating 18 U.S.C. § 1962(a), (c), and (d), and cannot be liable under RICO's civil liability provision, 18 U.S.C. § 1964(c). The court will grant the Township's motion for summary judgment and will dismiss plaintiffs' RICO claims against it.

An appropriate order will be entered.