Frank and Seba GENTY, et al., Plaintiffs,

v.

TOWNSHIP OF GLOUCESTER, et al., Defendants.

Frank and Seba GENTY, et al., Plaintiffs,

v.

Yei–Shong SHIEH, et al., Defendants.

Frank and Fran MAIESE, et al., Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Frank and Fran MAIESE, et al., Plaintiffs,

v.

Yei–Shong SHIEH, et al., Defendants.

Neil and Geralyn D'ALLESSANDRO, et al., Plaintiffs,

v.

CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Neil and Geralyn D'ALLESSANDRO, et al., Plaintiffs,

v.

Yei–Shong SHIEH, et al., Defendants.

Civ. A. Nos. 83–3891(SSB), 85–1611(SSB), 84–2549(SSB), 85–1612(SSB), 84–2407(SSB) and 85–1615(SSB).

United States District Court, D. New Jersey.

May 10, 1990.

Sugarman & Associates by Robert J. Sugarman and Marcia E. Berry, Philadelphia, Pa., for plaintiffs.

Paschon, Feurey & Rosetto by Robert V. Paschon, Toms River, N.J., for defendant Tp. of Gloucester.

## OPINION

BROTMAN, Senior District Judge.

Presently before the court is plaintiffs' motion seeking the entry of final judgment pursuant to Fed.R.Civ.P. 54(b) as to all claims against defendant the Township of Gloucester (the "Township") in the first phase of these sets of consolidated suits. Plaintiffs had initially sought certification pursuant to 28 U.S.C. § 1292(b) of the order in *Genty* dismissing certain RICO claims against the Township on statute of limitations grounds, and the order in the *Maiese* and *D'Allessandro* cases dismissing the identical RICO claims on grounds of municipal inability to form the requisite intent to commit a crime. After oral argument on January 5, 1990, counsel for plaintiffs was directed to file a motion setting forth more clearly the grounds upon which plaintiffs sought review of these matters. The instant motion was the product of that directive.[1]

As will become clearer within, this motion involves plaintiffs' efforts to seek Third Circuit review of various trial rulings in the *Genty* case, the only homeowners case to be tried to a jury verdict. More importantly in terms of the remaining litigation in these and related cases, plaintiffs seek review of this court's dismissal on April 12, 1989 of plaintiffs' claims against the Township under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* on the ground that a municipality is incapable of forming the mental state necessary to commit an act of racketeering activity, and therefore can not be liable under 18 U.S.C. § 1964(c). *Albanese v. City Federal Savings and Loan Ass'n*, 710 F.Supp. 563 (D.N.J.1989).

Also pending are the court's *sua sponte* motions: (1) to reconsider the prior dismissal of the RICO claims against the Township as untimely under the statute of limitations; (2) to approve the voluntary dismissal of the Township from Phase One of *Genty* pursuant to Fed.R.Civ.P. 41(a)(2); and (3) to approve the voluntary dismissal of Diamond Crest from Phase One of the *Genty* suit pursuant to Fed.R.Civ.P. 41(a)(2).

## I. FACTS AND PROCEDURE

Plaintiffs are homeowners who purchased property near a municipally owned landfill in Gloucester Township, Camden County, New Jersey. Along with other similarly situated homeowners, plaintiffs filed these lawsuits—there are a total of 17 complaints filed by twelve groups of plaintiffs[2]—against the Township and other defendants seeking recovery for damages from alleged fraud inducing their purchases and from the operation of and presence of toxic wastes in the landfill. These suits also include claims on behalf of the home-

1. The motion to certify under Section 1292(b) remains outstanding.

2. The homeowners cases are: *Genty v. City Federal Savings and Loan Ass'n*, Civil No. 83–3891; *Genty v. Yei–Shong Shieh*, Civil No. 85–1611; *Cuzzupe v. Paparone Realty Co.*, Civil No. 83–4485; *Cuzzupe v. Township of Gloucester*, Civil No. 85–1613; *Maiese v. City Federal Savings and Loan Ass'n*, Civil No. 84–2589; *Maiese v. Yei–Shong Shieh*, Civil No. 85–1612; *D'Allessandro v. City Federal Savings and Loan Ass'n*, Civil No. 84–2407; *D'Allessandro v. Yei–Shong Shieh*, Civil No. 85–1615; *Boone v. Gloucester Environmental Management Services, Inc.*, Civil No. 84–2557; *Boone v. Gloucester Environmental Management Services, Inc.*, Civil No. 85–1614; *Albanese v. City Federal Savings and Loan Ass'n*, Civil No. 85–914; *Penna v. City Federal Savings and Loan Ass'n*, Civil No. 88–915; *Volpe v. City Federal Savings and Loan Ass'n*, Civil No. 85–946; *DiSabatino v. City Federal Savings and Loan Ass'n*, Civil No. 85–947; *Panek v. City Federal Savings and Loan Ass'n*, Civil No. 85–948; *Berardi v. City Federal Savings and Loan Ass'n*, Civil No. 85–3291; *Berardi v. City Federal Savings and Loan Ass'n*, Civil No. 85–3234; *Pappert v. Benchmark Corp.*, Civil No. 85–5143; *Colonna v. City Federal Savings and Loan Ass'n*, Civil No. 86–870. There are additional homeowners suits pending in New Jersey state courts.

owners' children. These cases are referred to generally as the homeowners cases, to distinguish them from other suits related to the landfill.

Between 1975 and 1980 the Township owned, and Gloucester Environmental Management Services, Inc. ("GEMS") operated, the GEMS landfill. Plaintiffs each purchased real estate in or near the Briar Lake subdivision near the landfill between 1978 and 1982. They allege that the Township and other defendants, including a developer and a mortgage lender, knew that the landfill presented a health hazard but nonetheless sanctioned and facilitated the development and sale of residential housing in its vicinity. In short, these claims alleged fraud in the sale of real estate.

After plaintiffs had filed the first round of complaints for alleged real estate fraud in 1983 and 1984, the New Jersey Department of Environmental Protection suit for remediation and response costs, *New Jersey Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, Civ. No. 84–152 (hereinafter *"NJDEP v. GEMS "*), was removed to federal court. That suit encompasses claims under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereinafter "CERCLA"), 42 U.S.C. § 9601 *et seq.*, the New Jersey Spill Compensation and Control Act (hereinafter the "Spill Act"), N.J.Stat.Ann. § 58:10–23.11 *et seq.*, the Solid Waste Management Act, N.J.Stat.Ann. § 13:1E–1 *et seq.*, the Sanitary Landfill Facility Closure and Contingency Fund Act, N.J.Stat. Ann. § 13:1E–100 *et seq.*, and the Water Pollution Control Act, N.J.Stat.Ann. § 23:5–28 *et seq.*, against the Township as owner of the GEMS landfill, and against alleged operators, generators, and transporters. The suit, *in toto,* involves approximately 250 parties, and is described more completely in other opinions. *E.g., NJDEP*

*v. GEMS,* 719 F.Supp. 325 (D.N.J.1989).[3] This particular aspect of the landfill litigation presents the most complex case management issues; divided into clean-up and remediation phases, it has produced ten case management orders, with a Seventh Amended Complaint being filed on February 14, 1990.

The other related suits include *Township of Gloucester v. Maryland Casualty Co.,* Civil No. 83–4485, the suit by the Township against its insurance carriers, *Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828 (D.N.J.1989), the suit by various homeowners to enjoin the clean-up because of alleged health hazards, and various suits by NJDEP for access to property to effectuate the cleanup. *E.g., New Jersey Dep't of Environmental Protection v. Briar Lake Development Corp.,* 736 F.Supp. 62 (D.N.J.1990).

After the first round of homeowner complaints was filed (alleging fraud and RICO violations as mentioned above), the homeowner plaintiffs filed a second round of suits against the operators, generators, and transporters. Modeled after the *NJDEP v. GEMS* case, the basic legal claims in the second round of suits were based on RICO and CERCLA. In an opinion and order dated November 1, 1985, the homeowners suits were divided into two categories: the real estate fraud suits became the Phase One suits, and the ownership, management and operation suits were labelled the Phase Two suits. *Panek v. City Federal Savings and Loan Ass'n,* Civil No. 85–948 slip op. (D.N.J. Nov. 1, 1985). In five of the twelve cases, separate complaints had been filed[4] for the real estate and RICO claims, and the complaints of each group of plaintiffs were consolidated. Thus, in *Genty,* the two complaints were consolidated "for purposes of discovery and trial." Order of July 19, 1985 (Docket Entry No. 125). In each of the remaining seven cases, a single complaint had been filed. On November 1,

---

**3.** Litigation concerning the first phase of the cleanup of the GEMS landfill was completed when many of the parties agreed to a settlement in which approximately $32.5 million was produced to pay for the clean-up of the landfill.

The second phase of settlement negotiations is now in its infancy. The remaining task is to

establish a process for the management of a mechanism to clean the fluids that seep from the landfill and to provide for long-term operations and maintenance.

**4.** Those cases are the *Genty, Maiese, D'Allessandro, Cuzzupe,* and *Boone* cases.

1985, the court stayed the Phase Two aspects, that is, the ownership, operation and management claims of the cases to allow the parties, and the court, to concentrate their limited resources on real estate fraud claims in Phase One. Docket Entries 148 and 149.

The Phase one suits then proceeded through discovery in 1986. The *Genty* case was tried to a verdict before this court in April, 1989. The *Maiese* and *D'Allesandro* cases then went to trial, with the consent of the parties, before Hon. Jerome B. Simandle, *see* 28 U.S.C. 636(c)(1), the United States Magistrate who oversaw the case management and discovery in these complex suits. Settlements were reached before these cases were submitted to the respective juries.

In the *Genty* case, the Township had been dismissed as a defendant on October 19, 1984, on the basis of a two year statute of limitations for RICO claims. Docket Entry 58. On January 7, 1986, plaintiffs and the Township entered into a stipulation under which all Phase One claims would be dismissed against the Township. Docket Entry 196. This allowed the *Genty* case to proceed to trial, where a jury returned a verdict in favor of plaintiffs in the amount of $3,000 against defendants Oliveri, and a verdict of no cause for action against the remaining defendants other than the Township, which had been voluntarily dismissed before trial. Meanwhile, in 1987, the Supreme Court held that the statute of limitations under RICO is four years. *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

After the *Genty* trial, plaintiffs filed an appeal only to discover, once the case had reached the Third Circuit, that there was no final order from which to appeal because one defendant had not participated in the trial,[5] and because the cases had been consolidated. The Third Circuit therefore dismissed the appeal for lack of jurisdiction by order dated November 28, 1987.

The Phase One proceedings then returned to the district court, where the stay as to Phase Two of the homeowners suits was lifted on October 30, 1989. The remaining Phase One suits have largely settled, and the Township is the only viable non-settling party. The Township is also the only Phase One defendant in the Phase Two round of suits.

To achieve finality in order to permit an appeal to the Third Circuit, plaintiffs now seek to enter a voluntary dismissal as to defendant Diamond Crest in *Genty I* pursuant to Fed.R.Civ.P. 41(a)(2), *see Jorden v. National Guard Bureau*, 877 F.2d 245, 248 (3d Cir.1989); *Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 153 (3d Cir.1989); *Fassett v. Villanova Chapter of Delta Kappa Epsilon*, 807 F.2d 1150, 1155–56 & n. 6 (3d Cir.1986), *cert. denied sub nomine Turgiss v. Fassett*, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987), and the entry of final judgment under Fed.R.Civ.P. 54(b) as to the Phase One claims. *See Bergman v. City of Atlantic City*, 860 F.2d 560 (3d Cir.1988).

Also pending are the court's *sua sponte* motions: (1) to reconsider the order in *Genty* filed October 19, 1984 dismissing RICO claims against the Township on statute of limitations grounds; (2) to approve the voluntary dismissal of Diamond Crest filed in *Genty* on March 28, 1990 (Docket Entry 273) pursuant to Fed.R.Civ.P. 41(a)(2); and (3) to enter an order pursuant to Fed.R. Civ.P. 41(a)(2) approving the dismissal of the Township in *Genty* filed on February 7, 1986 (Docket Entry 196).

## II. DISCUSSION

The court will analyze each motion separately.

### A. *Reconsideration of Dismissal of RICO Claims Against Township:*

 The chronology relevant to the dismissal of RICO claims against the Township in the *Genty* case is as follows:

---

**5.** Defendant Diamond Crest had been in bankruptcy, and plaintiff's counsel had sought and obtained an order of the bankruptcy court lifting the automatic stay. Plaintiff's counsel, however, did not notify anyone, including his part-

ner who litigated the case, of this turn of events. Accordingly, Diamond Crest was not represented at trial and no party made an issue of this error.

1. June 19, 1984: Certain Phase One non-RICO claims against Township dismissed. Docket Entry 58.
2. October 19, 1984: Phase One RICO claims against Township dismissed as time-barred under two year statute of limitations. Docket Entry 101.
3. February 7, 1986. Plaintiff dismissed remaining Phase One claims against Township with prejudice. Docket Entry 196.

Subsequent to the October 19, 1984 dismissal of the RICO claims against the Township in the *Genty* case, the Supreme Court held that the statute of limitations for RICO actions is four years. *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

The Supreme Court's decision in *Malley–Duff* requires vacating the dismissal of the Township. This infirmity in the record in the *Genty* case is unique among the homeowners suits, for the Township was dismissed in the other homeowners suits, including *Maiese* and *D'Allessandro*, because the court found that a municipality was incapable of forming the requisite intent under RICO. *Albanese v. City Federal Savings and Loan Ass'n*, 710 F.Supp. 563 (D.N.J.1989). This weakness in the record must be corrected to enable the Third Circuit to review the merits of the court's holding that a municipality cannot be liable under RICO. The court therefore adopts the rationale of the *Albanese* opinion in the *Genty* case. There is now one reason for the dismissal of RICO claims against the Township as a defendant in Phase One of all the homeowners suits: a municipality "cannot form the requisite mental state to commit an act of racketeering activity, and is therefore incapable of violating 18 U.S.C. § 1962(a), (c), and (d), and cannot be liable under RICO's civil liability provision, 18 U.S.C. § 1964(c)." *Id.* at 569. An appropriate order will be entered vacating the opinion and order of October 19, 1984 to the extent that the RICO claims against the Township were found to be time-barred in *Genty*, and substituting therefore the opinion of April 12,

1989 in *Albanese v. City Federal Savings and Loan Ass'n*, 710 F.Supp. 563 (D.N.J. 1989) as the court's opinion in *Genty* supporting the dismissal of RICO claims against the Township.

**B.** *Voluntary Dismissals:*

The court now considers the motions to approve the voluntary dismissals. In doing so, it is mindful of the parties' desire to achieve finality.

■ "The 'determination whether to grant a motion for voluntary dismissal rests within the discretion of the district court.'" *Johnston Development Group, Inc. v. Carpenters Local 1578*, 728 F.Supp. 1142, 1146 (D.N.J.1990) (quoting *Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir.1980) (per curiam) and citing (*Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982)). *See Shields v. Murphy*, 116 F.D.R. 600, 602 (D.N.J.1987) (citing 9 C. Wright & A. Miller, Federal Practice & Procedure, § 2364 at p. 165 (1971)). Where no parties object, the court should allow the dismissal. *Sullivan v. State of N.J., Div. of Gaming Enforcement*, 602 F.Supp. 1216, 1220 (D.N. J.1985). *See Johnston Development*, 728 F.Supp. at 1146 (voluntary dismissal under Rule 41(a)(2) granted over objections of other defendants not subject to the motion, where objections were not directed to the dismissal *per se* ).

Rule 41(a) provides: "[e]xcept as provided in paragraph (1) of this subdivision, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." As this court has noted on a previous occasion, " '[s]ince Rule 41(a)(2) only applies when an answer or a motion for summary judgment has been filed by the defendants, the mere filing of a motion of an answer or a motion for summary judgment could not, without more, be a basis for refusing to dismiss without prejudice.'" *Johnston Development*, 728 F.Supp. at 1146 (quoting *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 n. 4 (4th Cir.1986)). Further, a motion for dismissal without prejudice "should not be

denied absent substantial prejudice to the defendant." *Andes,* 788 F.2d at 1036 (citation omitted). *See Hamilton,* 679 F.2d at 145; 9 C. Wright & A. Miller, Federal Practice & Procedure § 2364 at p. 165 (1971).

### 1. Dismissal of Diamond Crest:

■ No prejudice flows to any party from the voluntary dismissal of Diamond Crest. For several years now, all parties have assumed that Diamond Crest was not a viable defendant. *See supra* n. 3. Court approval of the dismissal of Diamond Crest only ratifies the manner in which the parties have proceeded since trial. The court will therefore enter an order approving the dismissal of Diamond Crest.

### 2. Dismissal of Certain Claims Against the Township:

■ There is likewise no prejudice from the February 7, 1986 dismissal of the Phase One non-RICO claims against the Township. It is important, however, to understand the context surrounding that dismissal. Plaintiffs moved for the dismissal of the claims against the Township in an attempt to obtain finality to permit an appeal of *Genty I.* Thus, all claims stayed by the Court's order of November 1, 1985, *i.e.* the Phase Two claims, were not dismissed.[6] The dismissal was not intended to encompass the Phase One claims against the Township under RICO, as those claims were previously dismissed by the October 19, 1984 order. The court therefore approves the February 7, 1986 dismissal and directs that such dismissal is not to be construed as a waiver of plaintiffs' right to appeal the dismissal of the Township for the reasons set forth in the *Albanese* opinion, which the court now adopts in the *Genty* case. Finally, the court preserves plaintiffs' remaining claims against the Township for the Phase Two litigation concerning the ownership and operation of the landfill.

### C. *Final Judgment Against Township:*

■ Plaintiffs seek entry of final judgment under Rule 54(b) in the *Genty, Maiese,* and *D'Allessandro* cases. The Township opposes this motion and claims that the cases were consolidated because plaintiffs claimed it was more efficient. The Township contends that plaintiffs should be estopped from arguing that the cases should no longer be consolidated. The Township also claims "Horn Book Law indicates" that certification under Rule 54(b) "should be granted only if there exists some *danger of hardship* or injustice through delay (emphasis added) [sic] which would be alleviated by immediate appeal." Letter Brief Dated January 31, 1990 at 2.

Federal Rule of Civil Procedure 54(b) states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Rule 54(b) is a response to the liberalization of pleading and joinder of claims under the Federal Rules of Civil Procedure. As one treatise explains its purpose, "[i]t was adopted because of the potential scope and complexity of civil actions under the federal rules, given their extensive provisions for the liberal joinder of claims and par-

---

**6.** The January 7, 1986 "Stipulation" of dismissal reads:

It is hereby stipulated by and between counsel that:

1. With respect to those issues (and those issues only) as to which proceedings have *not* been stayed in the above captioned cases by this Court's Opinion and Order of November 1, 1985 (attached), plaintiffs' claims against defendant Gloucester Township shall be and hereby are dismissed with prejudice; and

2. With respect to each and all of those issues as to which proceedings *have* been stayed by said Opinion and Order, plaintiffs' claims against Gloucester shall not be dismissed, but shall remain in full force and effect.

The Stipulation did, in fact, have attached a copy of the November 1, 1985 opinion.

ties." 10 C. Wright, A. Miller & M. Kane Federal Practice and Procedure § 2654 at p. 37 (2d ed.1983).

Entry of final judgment under Rule 54(b) is a two step process. First, the district court must "determine that it is dealing with a 'final judgment.'" *Curtiss–Wright Corp. v. General Electric Corp.*, 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is an 'ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)).

Once the district court concludes that the entry would be final, it must then determine whether there is any just reason for delay. The district court must act as a "dispatcher," *Sears, Roebuck*, 351 U.S. at 435, 76 S.Ct. at 899, in determining the appropriate time for appeal. The district court must exercise its discretion "in the interest of sound judicial administration." *Id.* at 437, 76 S.Ct. at 900. The court must balance "the possible injustice of a delay in entering judgment on a distinctly separate claim," 10 C. Wright, A. Miller & M. Kane Federal Practice and Procedure § 2654 at p. 35 (2d ed. 1983), against the "historic federal policy against piecemeal appeals." *Sears, Roebuck*, 351 U.S. at 438, 76 S.Ct. at 901. Other factors to be considered include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Allis–Chambers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir.1975) (citations omitted).

In *Hageman v. City Investing Co.*, 851 F.2d 69 (2d Cir.1988), the Second Circuit succinctly summarized the positions taken as to finality for purposes of 28 U.S.C. § 1291 absent entry of final judgment under Rule 54(b):

> Two circuits have held that a judgment in one portion of a consolidated action is final and appealable, even if other consolidated claims are still pending. *See Kraft, Inc. v. Local Union 327, Teamsters*, 683 F.2d 131, 133 (6th Cir.1982); *In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439, 441–42 (1st Cir.1972). Two other circuits have adopted an absolute rule that a judgment in a consolidated action that does not dispose of all of the claims is not a final, appealable judgment. *See Trinity Broadcasting Corp. v. Eller*, 827 F.2d 673, 675 (10th Cir.1987) (per curiam), *cert. denied*, [487] U.S. [1223], 108 S.Ct. 2883, 101 L.Ed.2d 918 (1988); *Huene v. United States*, 743 F.2d 703, 705 (9th Cir.1984). Yet other circuits have adopted a flexible approach, examining the type of consolidation and the relationship between the consolidated actions in order to determine whether the actions could be appealed separately absent Rule 54(b) certification. *See Ivanov–McPhee v. Washington National Insurance Co.*, 719 F.2d 927, 929–30 (7th Cir.1983); *Ringwald v. Harris*, 675 F.2d 768, 771 (5th Cir.1982); *Jones v. Den Norske Amerikalinje A/S*, 451 F.2d 985, 986–87 (3d Cir.1971).

The flexible approach first undertaken by the Third Circuit in *Jones* was recently followed by the Third Circuit in *Bergman:*

> We are convinced that the case-by-case approach is the most appropriate. We are also persuaded that in a case like the one presently before us, where two actions have been consolidated for discovery and trial for all purposes, that an order concluding one of the consolidated cases should not be considered final and appealable.

*Id.* at 566.

In *Bergman*, the Third Circuit further noted that "there is no reason why previ-

ously independent cases, consolidated by the court, should not also be permitted to pursue this avenue of appeal," namely entry of final judgment under Rule 54(b). *Id.* at 567 n. 12.

The only difficulty with this flexible approach is that it may, in some cases, encourage manipulative attempts to permit an appeal that 28 U.S.C. § 1291 would otherwise prohibit. *See Bergman,* 860 F.2d at 565–66 n. 9.[7]

The instant case is distinguishable from *Bergman.* "Several of the 'factors which militate[d] toward' finding non-certifiability" were present in *Bergman:*

> "the suits are filed in the same forum, [and] are before the same judge." In addition, while the complaint and the defendants are not identical, they are substantially similar. Both *Bergman* and *Beachgate* [, the other consolidated case,] have as the central dispute the question of whether the condominium owners within the tract must consent to any revision of the Plan. As to the identity of the parties, there are two points worth noting. First, the Association which is the plaintiff in the *Beachgate* action represents the same group as the class which the Bergmans purport to represent in their amended complaint; namely, owners of condominiums in the Beachgate complex. Second, although the one count naming Resorts as a defendant in *Bergman* has been dismissed, Resorts was a defendant to the *Bergman* as well as *Beachgate* action.

*Id.* at 564–65.

By contrast, the Phase One and Two aspects of the *Genty* case present factors that support allowing an appeal. Although the plaintiffs in both actions are the same, the defendants are entirely different parties, except for the Township. which is a defendant in both actions. The theories of liability in the two actions are different; Phase One involves real estate fraud, while Phase Two concerns RICO and CERCLA claims. Phase One and Phase Two are distinct cases.

Accepting the Third Circuit's concern with respect to finality of judgements in consolidated cases, *Cemar, Inc. v. Nissan Motor Corp.,* 897 F.2d 120 (3d Cir.1990), the court makes the following findings:

1. After substantial periods of delay after the trial in Phase One of *Genty,* plaintiffs do not desire to pursue claims against the remaining defendant, Diamond Crest. Nothing remains to be decided in *Genty* Phase One.

2. The *Genty* Phase One trial is now complete as to all viable claims and all viable parties. Certification pursuant to 28 U.S.C. § 1292(b) would not permit review of many of the court's evidentiary rulings made at trial.

3. Review of the *Genty* Phase One trial would guide disposition of any similar issues in the remaining Homeowners Phase One suits in *Cuzzupe* and *Boone.* Although these cases are largely settled, there are still a small number of non-settling parties.

4. Appellate review of *Genty* Phase One, including the municipal immunity determination, will provide review of a common question of law in the remaining Phase One cases as to the Township, the major viable non-settling party in all of the homeowner cases.

5. Review of the municipal liability issue will aid in the resolution of similar, if not identical, legal issues in Phase Two of the Homeowner suits.

6. Resolution of the RICO immunity issue by the Third Circuit would also guide the resolution of the other cases relating to the GEMS landfill in general,

---

7. Footnote 9 in *Bergman* discusses a situation where plaintiffs deliberately take advantage of such a rule by filing separate complaints as to each claim, and then, after the complaints are consolidated, seek to remove consolidation as needed to obtain final orders from which to take appeals pursuant to 28 U.S.C. § 1291. The Third Circuit noted that "[s]uch a result plainly violates the purpose of avoiding piecemeal appellate litigation intended by the finality requirement of 1291 and Rule 54(b). Footnote 9 is in tension with footnote 12 of *Bergman,* where the Third Circuit seemed to endorse the use of Rule 54(b) as a means of obtaining appellate review in consolidated cases.

and the Township's role as an owner and operator. The reality of complex litigation of this nature is that the Homeowners cases, the *GEMS* case, and the *Maryland Casualty* indemnification litigation all proceed in some relation to each other; progress in one case helps to prod the others forward. Resolution of this major issue in the Homeowners suits would therefore foster a final disposition of the other suits.

The *Maiese* and *D'Allessandro* cases do not presently stand in a posture warranting the entry of final judgment. Other defendants remain in those cases, and there are still settlements to be approved on behalf of the minor plaintiffs. Thus, plaintiffs motion for the entry of final judgment as to these cases will be denied. As to *Genty*, there is no just reason to delay the entry of final judgment.

### III. CONCLUSION

For the foregoing reasons, the court will enter final judgment as to all claims against the Township in the *Genty* case. The *Maiese* and *D'Allessandro* cases are not prepared for the entry of final judgment. The voluntary dismissals of Diamond Crest and of certain non-RICO claims against the Township will be approved. The court further adopts the opinion in *Albanese v. City Federal Savings and Loan Ass'n*, 710 F.Supp. 563 (D.N.J.1989) as the basis for the court's dismissal of the RICO claims against the Township in *Genty*.

### ORDER

This matter having come before the court on plaintiffs' motions (1) to enter final judgment pursuant to Fed.R.Civ.P. 54(b) and (2) to certify certain issues for appeal pursuant to 28 U.S.C. § 1292(b), and the court's *sua sponte* motions: (3) to reconsider the prior dismissal of RICO claims against the Township as untimely under the statute of limitations; (4) to approve the January 7, 1986 voluntary dismissal as to certain claims against the Township; and (5) to approve the voluntary dismissal,

filed March 28, 1990 (Docket Entry 273), as to all claims against Diamond Crest: and

The court having considered the submissions of the parties; and

For the reasons set forth in the court's opinion of this date;

IT IS on this 10th day of May, 1990 hereby

ORDERED that:

(1) plaintiffs' motion to enter final judgment pursuant to Fed.R.Civ.P. 54(b) is GRANTED IN PART AND DENIED IN PART in that FINAL JUDGMENT IS ENTERED as to all non-RICO claims against the Township in the GENTY (Civil No. 83–3891(SSB)), and FINAL JUDGMENT IS NOT ENTERED as to all non-RICO claims in MAIESE (Civil No. 84–2549(SSB)) and D'ALLESSANDRO (Civil No. 84–2407(SSB));

(2) plaintiff's motion for certification of certain issues for appeal pursuant to 28 U.S.C. § 1292(b) is DENIED;

(3) on reconsideration of the court's prior dismissal of RICO claims against the Township in *Genty I* 83–3891(SSB), the prior order dated October 19, 1984 is VACATED and the RICO claims against the TOWNSHIP are DISMISSED for the reasons set forth in the court's opinion in *Albanese v. City Federal Savings and Loan Ass'n*, 710 F.Supp. 563 (D.N.J.1989);

(4) the January 7, 1986 voluntary dismissal as to certain claims against the Township IS APPROVED UNDER THE TERMS AND CONDITIONS SET FORTH IN THE COURT'S OPINION OF THIS DATE; and

(5) The voluntary dismissal, filed March 28, 1990 (Docket Entry 273), as to all claims against Diamond Crest is APPROVED.

No costs.